UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NINA BURLEIGH, <br> FREQUENCY FORWARD <br><br> Plaintiffs, <br><br> FEDERAL COMMUNICATIONS COMMISSION <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 25-1268 (ABJ) <br> ) <br> ) <br> ) <br> ) |

**OPPOSITION TO MOTION FOR EXTENSION OF TIME**

Plaintiffs, Nina Burleigh and Frequency Forward, by counsel, hereby oppose the Federal Communication Commission's (FCC) Motion for a 30-day extension in which to file a response to Plaintiffs' Complaint (Complaint).

1. Plaintiffs filed a Freedom of Information Act (FOIA) request with the FCC on February 24, 2025, seeking disclosure of documents concerning the Department of Government Efficiency's (DOGE) activities within the agency. Complaint, para. 16. (ECF No. 1). The FOIA included a request for expedited processing stating that there was a "compelling need" for the records requested. The FOIA request can be found at Complaint, pages 12-18. On March 4, 2025, the FCC granted Plaintiffs' request for expedited processing stating:

> We conclude that the reasoning you provide justifies granting expedited processing on the basis that you are a person primarily engaged in disseminating information and there is an urgency to inform the public concerning actual or alleged government activity. Therefore, we grant your request for expedited processing. We will commence the search for records responsive to your request and anticipate responding to you as soon as possible.

This was the last Plaintiffs heard from the FCC. The FCC neither produced any of the requested documents, nor informed Plaintiffs of its need for additional time. Frustrated with the agency's

failure to act on a time sensitive matter, Plaintiffs filed the Complaint with this Court on April 24, 2025. Plaintiffs were required to expend resources and burden the Court in an effort to get documents the FCC had agreed were urgently needed to inform the public.

2. On June 3, 2025, Defendant's counsel contacted counsel for the Plaintiffs seeking a 30-day extension of time. In an email, FCC's counsel stated:

> I was just assigned to this action and will need some time to confer with the agency. I've already been able to get in touch with them, and I know that they're interested in seeing if Plaintiff will narrow the FOIA request so that we can get you the most relevant records and make this quicker to process. I'm expecting to be able to send you the agency's narrowing proposals later this week or early next. I'll get those over to you as soon as I can. In the interim, would you please let me know if Plaintiff will agree to a 30-day extension to July 9 for Defendant's response to the Complaint?

It appears that the FCC is only now turning its attention to the FOIA request and is seeking a 30-day extension to negotiate a narrowing of the FOIA request. Negotiating a narrowing of the request is something that should have been addressed soon after the FOIA request was filed. Plaintiffs' counsel responded by email stating that the Plaintiffs would oppose Defendant's motion seeking a 30-day extension. Plaintiffs further stated that they are "willing to negotiate in good faith on what documents will be produced and when they will be produced, but this should not delay the FCC from timely filing a response to the Complaint. Nor should it delay the FCC in producing the documents requested." Later that afternoon, the FCC filed its Motion.

3. The FCC's Motion provides two arguments in support of its request for a 30-day extension. The Motion claims: "Plaintiff failed to properly serve the U.S. Attorney's Office because the service package, at least as it appears in the U.S. Attorney's Office's intake folder, failed to include a copy of the complaint." Motion, para. 2. The Motion further states that, "This action was assigned to undersigned counsel only yesterday, and undersigned counsel requires a

2

brief period of time to confer with the agency to assess the status of the FOIA request, Defendant's defenses, and a path forward." Motion, para. 3.

4. As to the first argument, Plaintiffs cannot verify counsel's claim but believe that proper service was made. Assuming facts most favorable to Defendant, the failure to include a paper copy of the Complaint in the service package does not justify an extension of time to file an answer. The US Attorney's Office and the FCC are known litigants in this Court. It is Plaintiffs' understanding that they were served with the Complaint electronically via the Court's electronic filing system soon after it was filed. Defendant's counsel does not claim otherwise. Likewise, the claim that counsel was only just appointed is unpersuasive. The FCC and the US Attorney's Office have had the Complaint since late April. This proceeding should not be delayed on account of an internal office assignment failure.

5. As explained in the FOIA request, the documents Plaintiffs seek are time sensitive. They seek documents concerning DOGE's activities at the FCC. Until recently, Elon Musk was the head of DOGE. Musk is the founder and Chief Executive Officer of Space Exploration Technologies Corporation (SpaceX) and its largest shareholder. Starlink is a wholly owned subsidiary of SpaceX, which is an FCC regulated entity. It requires FCC approval to launch communications satellites and to operate on assigned frequencies. As the head of DOGE, Musk has taken on the role of a regulator. Musk's dual role as head of DOGE and SpaceX creates an unmanageable conflict of interest at the FCC, the extent to which the FOIA documents will reveal. A report prepared by the office of Senator Elizabeth Warren, SPECIAL INTERESTS OVER THE PUBLIC INTEREST: ELON MUSK'S 130 DAYS IN THE TRUMP

ADMINISTRATION, points out specific examples of conflict of interest and questionable dealing with the government.[1]

> While serving as a "Special Government Employee" in the White House and leading the Department of Government Efficiency (DOGE), Musk has maintained extensive financial conflicts of interest through his ownership or stake in several private and publicly traded companies: Tesla, SpaceX, X and xAI, the Boring Company, and Neuralink.
>
> The Federal Communications Commission (FCC) is expected to offer subsidies for SpaceX to provide satellite broadband services, through the Rural Digital Opportunity Fund program, in reversal of the FCC's prior decision not to give SpaceX roughly $900 million in subsidies because the company failed to meet program requirements.
>
> The FCC has opened an investigation against SpaceX competitor EchoStar, which holds EchoStar satellite licenses "coveted by rival firms including SpaceX."
>
> The FCC approved a waiver for SpaceX to provide satellite service directly from orbit to smartphones, over the objection of cell network providers who say this move will worsen mobile network service for many.

Plaintiffs have requested documents that will help explain what role DOGE, Musk and Musk's employees have played at the FCC, both as regulators and as FCC licensees. These documents are relevant now. They will be of little value six months from now. The FCC's stonewalling since late February must not be rewarded by further delay in this Court.

---

[1] https://www.warren.senate.gov/imo/media/doc/130_days_of_elon_musk_report.pdf

6. Accordingly, the Motion should be denied. Alternatively, the Court may grant a brief extension of a week until June 13, 2025, to give Defendant's counsel an opportunity to prepare a response.

                        Respectfully submitted

By:       /s/ Arthur Belendiuk
          Arthur V. Belendiuk
          D.C. Bar No. 336768
          Smithwick & Belendiuk, P.C.
          5028 Wisconsin Avenue, N.W., #301
          Washington, D.C. 20016
          (202) 363-4559

Dated: June 4, 2025