UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NINA BURLEIGH, <br> FREQUENCY FORWARD <br><br> Plaintiffs, <br><br> FEDERAL COMMUNICATIONS COMMISSION <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 25-1268 (ABJ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR LEAVE TO TAKE DISCOVERY**

Arthur V. Belendiuk
D.C. Bar No. 336768
Smithwick & Belendiuk, P.C.
5028 Wisconsin Avenue, N.W., #301
Washington, D.C. 20016

Dated: February 9, 2025

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**..............................................................................1

**THE FCC'S SEARCH FOR DOCUMENTS RESPONSIVE TO PLAINTIFFS' FOIA REQUEST WAS INADEQUATE AND MADE IN BAD FAITH**........................4

**ARGUMENT**.........................................................................................................12

**CONCLUSION**.....................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
    2006 U.S. Dist. LEXIS 34857, 2006 WL 1518964, (D.D.C. June 1, 2006)...............12

*Comptel v FCC*,
    910 F.Supp.2d 100 (D. D,C, 2012).......................................................................13

*Dep't of the Interior and Bureau of Indian Affrs. v. Klamath Water Users Protective Assn.*,
    532 U.S. 1, 7-8, 121 S. Ct. 1060, 149 L. Ed. 2d 87 (2001)...................................12

*EPA v. Mink*, 410 U.S.
    73, 86, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)......................................................14

*Judicial Watch v. FDA*,
    449 F.3d 141, (D.C.Cir. 2006)............................................................................14

*Hall v. Dep't of Justice*,
    552 F.Supp.2d 23, 27 (D.D.C. 2008)...................................................................14

*Hamdan v. United States DOJ*,
    797 F.3d 759, (9th Cir. 2015)..............................................................................12

*King v. Dep't of Justice*,
    830 F.2d 210, (D.C.Cir. 1987).............................................................................14

*Miccosukee Tribe of Indians of Fla. v. United States*,
    516 F.3d 1235, (11th Cir. 2008)..........................................................................13

*Miller v. Dep't of State*,
    779 F.2d 1378 (8th Cir. 1985).............................................................................13

*Morley v. CIA*,
    508 F.3d 1108, 378 U.S. App. D.C. 411 (D.C. Cir. 2007).............................13, 14

*Pratt v. Webster*,
    218 U.S. App. D.C. 17, 673 F.2d 408, (D.C. Cir. 1982)......................................12

*Pub. Citizen Health Research Group v. FDA*,
    997 F. Supp. 56, (D.D.C. 1998)...........................................................................12

*Robert Julien Family Del. Dynasty Tr. v. IRS*,
    2024 U.S. Dist. LEXIS 29758, (S.D. Fla. Feb. 19, 2024).....................................12

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197, (D.C.Cir.1991)……………………………………………………..……..13

*Transgender Law Ctr. v. Immigration & Customs Enf't*,
    46 F.4th 771, (9th Cir. 2022)………………………………….. ……………………….12, 13

*Valencia-Lucena v. United States Coast Guard*,
    336 U.S. App. D.C. 386, 180 F.3d 321, (1999)……………………………………………14

*Vaughn v. Rosen*,
    484 F.2d 820, (D.C.Cir.1973)………………………………………………...…………13, 14

*Voinche v. FBI*,
    412 F. Supp. 2d 60, (D.D.C. 2006)……………………………………………………….12

*Weisberg v. Dep't of Just.*,
    705 F.2d 1344, 227 U.S. App. D.C. 253 (D.C. Cir. 1983)…………………....…..…..…..13

**Administrative Cases**

*In the Matter of Space Exploration Holdings, LLC; Request for Deployment and
Operating Authority for the SpaceX Gen2 NGSO Satellite System*,
    2026 FCC LEXIS 77, (Space Bureau, Jan. 9, 2026)…………………………………….3, 4

**Statutes**

47 U.S.C. § 154(b)(2)(A)…………………………………………………………………...…..10

**Rules**

5 C.F.R. §2635, Subpart D…………………………………………………………..………..10

Fed. R. Civ. P. 26(d)…………………………………………..……………………………......1

Fed. R. Civ. P. 30(b)(6)………………………………………………………………...……….1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NINA BURLEIGH,<br>FREQUENCY FORWARD<br><br>Plaintiffs,<br><br>FEDERAL COMMUNICATIONS COMMISSION<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 25-1268 (ABJ)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR LEAVE TO TAKE DISCOVERY**

1. Plaintiffs, Nina Burleigh and Frequency Forward, respectfully request that the Court issue an order permitting Plaintiffs to seek discovery under Federal Rule of Civil Procedure 26(d), including leave to take the deposition(s), under Federal Rule 30(b)(6), of an appropriate Federal Communications Commission ("FCC") witness or witnesses. Plaintiffs submit this memorandum of points and authorities in support of their Motion for Leave to Take Discovery ("Motion").

2. Counsel for Plaintiffs conferred with Defendant's counsel. Defendant opposes the relief requested in this Motion.

**PRELIMINARY STATEMENT**

3. On November 13, 2024, President-elect Donald Trump, at the urging of Elon Musk ("Musk") announced the formation of DOGE and placed Musk at its head.[1] Musk oversaw

---

[1] Colleen Long & Jill Colvin, *Trump says Musk, Ramaswamy will form outside group to advise White House on government efficiency*, AP News (Nov. 12, 2024), https://apnews.com/article/donald-trump-president-elon-musk-vivek-ramaswamy-2f0f76bb6440231f2504b77cb117d988.

DOGE from January 20, 2025, until May 28, 2025. Musk is a multi-billionaire and the largest contributor to the Republican Party.[2] After leaving DOGE, Musk continues to contribute money in support of Republican Party candidates.[3] Musk holds a 42% ownership stake and almost 79% of the voting power of Space Exploration Holdings, LLC ("SpaceX").[4] Starlink, a wholly owned subsidiary of SpaceX, is regulated by the FCC.

    4. According to a report published by Permanent Subcommittee on Investigations Minority Staff, Musk through DOGE enriched his companies and himself by using his governmental authority to evaded oversight, derail investigations, and make litigation disappear.[5] Since President Trump has taken office, the FCC, headed by Chairman Brendan Carr,[6] has acted favorably on several Starlink initiatives. For example, during this period, the FCC has opened an investigation against SpaceX competitor EchoStar, which holds satellite licenses coveted by SpaceX.[7] When EchoStar agreed to sell its satellite frequencies to Starlink, Carr dismissed the

---

[2] Musk donated more than $291 million to Republican candidates, political action committees and other outside spending organizations in the 2024 election cycle. Meyers, David, *Elon Musk tops list of 2024 political donors, but five others gave more than $100 million* (March 26, 2025) https://www.opensecrets.org/news/2025/03/elon-musk-tops-list-of-2024-political-donors-but-six-others-gave-more-than-100-million

[3] Rego, Max *Musk drops $10 million in race to replace McConnell* (Jan. 19, 2026) https://thehill.com/homenews/campaign/5695621-musk-donation-nate-morris-kentucky-senate/

[4] Maidenberg, Micah, *Elon Musk Borrowed $1 Billion From SpaceX in Same Month of Twitter Acquisition* (Sept. 5, 2023) *Wall Street Journal* https://www.wsj.com/business/elon-musk-supacex-loan-269a2168;

[5] https://www.hsgac.senate.gov/wp-content/uploads/2025-04-27-Minority-Staff-Memorandum-Elon-Musk-Conflicts.pdf

[6] Brendan Carr wrote a chapter on the FCC and telecommunication for Project 2025, the Heritage Foundation's blueprint for the Trump administration. https://www.cbsnews.com/news/trump-fcc-brendan-carr-project-2025-what-to-know/

[7] SPECIAL INTERESTS OVER THE PUBLIC INTEREST: ELON MUSK'S 130 DAYS IN THE TRUMP ADMINISTRATION https://www.warren.senate.gov/imo/media/doc/130_days_of_elon_musk_report.pdf

2

investigation.[8] The FCC granted a waiver for SpaceX to provide satellite service directly from orbit to smartphones, over the objection of cell network providers who say this move will worsen mobile network service for many.[9] Most recently, the FCC's Space Bureau in *SpaceX Gen2 NGSO Satellite System*, over the objections of various parties, authorized SpaceX to launch an additional 7,500 satellites and granted SpaceX several key waivers of the FCC's rules.[10]

5. On February 24, 2025, Plaintiffs filed a FOIA request with the FCC. ECF No. 1 at 12–18. Plaintiffs' FOIA request seeks information concerning DOGE's activities within the FCC and especially documents concerning FCC contacts with Elon Musk, SpaceX, Starlink or other entities associated with Musk and his various enterprises. DOGE's operations within the FCC are at the heart of a debate concerning potential conflicts of interest between Musk and DOGE as government regulators, and Musk's SpaceX, including Starlink, as a regulated entity seeking licenses and other authorizations from the FCC. In the *SpaceX Gen2 NGSO Satellite System* proceeding the Ukrainian Congress Committee of America, Inc. ("UCCA"), raised the issue of conflict-of-interest between the FCC and Musk. The Space Bureau declined to take any action or investigate. Instead, it dismissed UCCA's conflict-of-interest showing stating:

> DOGE did not make any submissions in the record of the above-captioned proceedings. Accordingly, given the lack of any such submissions, the Commission did not rely on any input from DOGE in these proceedings. In addition, Elon Musk left his

---

[8] DeSelding, Peter, *And just like that: FCC Chairman drops investigation into EchoStar licenses after spectrum sales to AT&T, SpaceX*, (Sept. 9, 2025) Space Intel Report https://www.spaceintelreport.com/and-just-like-that-fcc-chairman-drops-investigation-into-echostar-licenses-after-spectrum-sales-to-att-spacex/

[9] See, n. 7.

[10] *In the Matter of Space Exploration Holdings, LLC; Request for Deployment and Operating Authority for the SpaceX Gen2 NGSO Satellite System*, 2026 FCC LEXIS 77, (Space Bureau, Jan. 9, 2026)

3

> government role around the end of May 2025, so the conflict-of-
> interest concerns underlying the Motion for Stay are moot.[11]

This hardly addresses the conflict-of-interest issue, but the Space Bureau declined to go any further. Once again, Musk avoided regulatory scrutiny.

6. The evidence strongly suggests that Musk bought his way into the White House and his position in DOGE, and that he has used his government authority to earn huge profits for himself and his companies. As Supreme Court Justice Sonia Sotomayor stated in a recent oral argument, "You mean to suggest that the fact that one major donor to the current president—the most major donor to the current president—got a very lucrative job immediately upon election from the new administration does not give the appearance of quid pro quo?"[12] Plaintiffs' FOIA request seeks documents that shed light on the relationship between the FCC, Musk as regulator and Musk and his companies as regulated entitles. It is just this relationship that the FCC, through the leadership of its Chairman, Brendan Carr, seeks to conceal. Discovery is necessary to unearth documents responsive to Plaintiffs' FOIA request which the FCC has withheld in bad faith.

### THE FCC'S SEARCH FOR DOCUMENTS RESPONSIVE TO PLAINTIFFS' FOIA REQUEST WAS INADEQUATE AND MADE IN BAD FAITH.

7. The FCC has failed to make a good faith search for documents responsive to Plaintiffs' FOIA request. While the FCC's staff often communicates via text messages, the Defendant has not provided a single text message. For example, in a March 12, 2025, email from Adam Candeub, FCC General Counsel, to Tarak Makecha, an imbedded DOGE employee, Candeub

---

[11] *SpaceX Gen2 NGSO Satellite System* at para. 28 (footnote omitted).

[12] Olmsted, Edith, *Sotomayor Rips Lawyer Who Claims Elon Musk's DOGE Job Wasn't Shady* (Dec. 9 2025) https://newrepublic.com/post/204200/sonia-sotomayor-supreme-court-elon-musk-doge-quid-pro-quo

states, "Responding to your text, below is the email chain reflecting the last interaction we had with DOGE." In the next paragraph of that email Candeub states, "As I said in my text, I'd be happy to introduce you to people tomorrow."[13] The text exchange between Candeub and Makecha was not produced or identified in the *Vaughn* index the FCC produced on February 2, 2026.[14]

8. Plaintiffs' FOIA request broadly defines documents to include "SMS messages, and messages on applications such as Signal, Telegram, iMessage, WhatsApp, Slack, and Microsoft Teams" and "communications sent through personal electronic devices or accounts in the course of their work. ECF No. 1 at 12–18. Except for a handful of Microsoft Teams messages, these types of documents have not been produced, though the evidence demonstrates that they exist and should have been produced.

9. FOIA request number 8 states: "All documents from January 1, 2021, to the present, relating to travel by Brendan Carr or the Carr Office to any location or facility of any Elon Musk Affiliated Entity." Not a single document was produced, or identified in the *Vaughn* index, which is responsive to Plaintiffs' request no. 8, even though such documents clearly exist. Brendan Carr maintains a public friendship with Elon Musk, frequently supporting his companies, accusing the Biden administration of "regulatory harassment," and benefiting Musk's businesses with favorable FCC decisions. Their alliance is visible through Carr's posts on Musk's X platform, his attending SpaceX events, and his advocacy against actions that hindered Starlink's federal

---

[13] Bates No. 002558, email from Adam Candeub to Tarak Makecha, March 13, 2025. Attached hereto as part of Exhibit 1.

[14] See Exhibit 2. The FCC's *Vaughn* index is penurious in its reasons for redactions or withholdings of document. It lacks sufficient detail for the Plaintiffs, or subsequently the court, to assess the claims for exemptions.

subsidies.[15] Carr is also known to be a person who regularly communicates through text messages.[16] He has had numerous contacts with Musk's organization and has often traveled to meet with Musk or to attend a SpaceX launch. Yet, the Defendant has produced no records related to such travel even though Carr's own FCC-affiliated social media accounts indicated that during the FOIA search period Carr made at least eight trips to Musk Affiliated Entities. Below are posts Carr made on his X account. They each demonstrate that Carr was physically present at a facility owned and operated by one of Musk's companies.

- On June 30, 2021, Carr posted on X, "Beaming high-speed Internet from space. The @SpaceX team here in Redmond, Washington manufactures the thousands of next-gen satellites that are helping to expand connectivity. The post includes pictures of Carr at the Redmond facility.[17]

- On March 18, 2024, Carr posted on X, "Great to visit with the talented Starlink team in Texas today. LEO satellite systems are changing the game for Internet connectivity." The post includes a picture of Carr with the Starlink team.[18]

- On May 28, 2024, Carr posted on X from Hawthorne, California, "SpaceX has changed the game for getting mass into orbit. This has unlocked a new wave of innovation and space entrepreneurship in America. Great to visit with Brian and the talented manufacturing team here." The post includes a picture of Carr and another individual standing in front of a SpaceX rocket.[19]

- On July 3, 2024, Carr posted on X, "Great to meet with the talented @Starlink and @SpaceX teams in Redmond, Washington recently. Beaming high-speed Internet across the globe from low earth orbit satellites is a game changer for connectivity." The post

---

[15] Bode, Karl, *FCC Boss Brendan Carr Shamelessly Plugs Elon Musk's Starlink Like A Dodgy Used Car Salesman* (April 16, 2025) Techdirt https://www.techdirt.com/2025/04/16/fcc-boss-brendan-carr-shamelessly-plugs-elon-musks-starlink-like-a-dodgy-used-car-salesman/

[16] For example, see Darcey, Oliver "*A Runaway Carr Pressed by Status over text message, FCC boss Brendan Carr defended his actions—including his decision not to go after Rupert Murdoch's Fox.*" (Feb. 12, 2025) Status https://www.status.news/p/brendan-carr-fcc-fox-interview?_bhlid=18a464197dbd748329ec25da4892c6fdaf496f77&utm_campaign=a-runaway-carr&utm_medium=newsletter&utm_source=www.status.news

[17] https://x.com/BrendanCarrFCC/status/1410381256714461190?s=20

[18] https://x.com/hashtag/CarrTrip?src=hashtag_click

[19] https://x.com/BrendanCarrFCC/status/1795477589395718351?s=20

6

      includes a picture of Carr standing with another individual next to a model of a SpaceX rocket.[20]

- On August 22, 2024, Carr posted on X, "Great to spend time with @SpaceX's talented & hardworking teams today. Their bold and innovative efforts are opening up new opportunities for our economy and humanity. And, by the way, there's nothing like seeing a Starship in person. Starbase, Texas | Visiting here can change your perspective. Rolls of stainless steel bump along on trucks down the old road that leads to this scrubby spit of land. That steel eventually leaves earth from here at Mach speed thanks to the bold, innovative work of SpaceX's engineering teams." The post includes a picture of Carr at Starbase, Texas.[21]

- On August 26, 2024, Carr posted on X, "Elon Musk has transformed long-dormant industries, and he's developed a first principles "production algorithm" to deliver results. It's a great blueprint for reforming the Administrative State, driving efficiency in government, and unleashing a new cycle of American innovation." The post includes a picture of Carr and Musk at what appears to be a Tesla facility. The location is not disclosed.[22]

- On October 13, 2024, posted on X, "A historic day here in Texas. Congratulations to @SpaceX and its talented team. The most powerful rocket ever built. And an extraordinary booster catch back at the pad. Amazing to see." The post includes a picture of a SpaceX rocket taking off and the booster landing.[23]

- On Nov 19, 2024, Carr posted on X, "A historic day at Starbase. Congratulations to the SpaceX team on a successful Sixth test flight—another giant leap forward." The post includes pictures of Carr at SpaceX's Starbase in Texas and a photograph of Carr posing with Musk.[24]

There are at least eight instances within the time frame of Plaintiffs' FOIA request during which Carr traveled to a "location or facility of any Elon Musk Affiliated Entity."

    10. Clearly, Carr or his office must have communicated via email or text message with the Musk Affiliated Entity he was scheduled to visit. Yet no documents were identified or produced. As a federal agency, the FCC likely adheres to federal travel regulations. For official

---

[20] https://x.com/BrendanCarrFCC/status/1808515912871403718?s=20

[21] https://x.com/BrendanCarrFCC/status/1826717117368180774?s=20

[22] https://x.com/BrendanCarrFCC/status/1828136919467008216?s=20

[23] https://x.com/BrendanCarrFCC/status/1845471716518113780?s=20

[24] https://x.com/BrendanCarrFCC/status/1859044179852357867?s=20

travel, it is almost certain that – at the very minimum – a travel itinerary, briefing memorandum or calendar notice with the agenda would have been created by the FCC or Carr's Office staff. These itineraries or calendar notices are official records, and a simple search should have produced them. Furthermore, all Commission travel is generally required to be booked through the Commission's travel management software provided by E2 Solutions.[25] The E2 Solutions software can produce records of all travel authorizations and voucher amounts by employee name. Again, a simple search of the E2 Solutions database for travel should have produced travel itinerary authorizations or vouchers.[26]

11. Plaintiffs' need for these documents is critical. As discussed, supra, the FCC has refused to consider the conflict-of-interest created, on the one hand, by Musk's role as a super contributor to the Republican Party, his role as head of DOGE and, on the other hand, his control of SpaceX as an FCC regulated entity. Providing a detailed account of Musk, his companies and DOGE's contacts with the FCC will provide the public with a better understanding of the issues raised by such a relationship. Thus far, the FCC has produced only one email sent by Carr.[27] It concerns how the FCC should respond to press questions concerning embedded DOGE employees. Carr's email response is completely redacted. A search of the documents shows that Musk's name appears nowhere in the FOIA documents produced thus far. SpaceX is mentioned only in a published FCC order provided as an attachment to an email and as part of an FCC radio

---

[25] See https://e2.gov.cwtsatotravel.com/ThinkCAP/e2/loginHelp?execution=e1s1 (noting that the FCC uses E2 Solutions as its travel vendor).

[26] See E2 Solutions; UG20: Getting Started, Using the E2 Interface, Release 24.4, January 2025, at 84, available at https://e2.gov.cwtsatotravel.com/help/ug/ets2_ug20_getting_started.pdf The manual notes that: "E2 allows searchable access to indexed and archived travel transaction information (including receipts attached to authorizations and vouchers) for six years and three months (75 months) from the date of the paid voucher."

[27] Exhibit 1, Bates No. 002517.

database, also attached to an email. Starlink's name appears only in an FCC published order attached to an email.

12. Plaintiffs requested all records related to the hiring of DOGE staffers at the Commission. Specifically, "All documents relating to the hiring of DOGE Team members or any other Schedule C or non-career Senior Executive Service (SES) or Senior Level (SL) employees to be placed within the FCC, including but not limited to the hiring of special government employees." ECF No. 1 at 12–18.

13. In this case, the FCC has provided some records related to the hiring of DOGE employees but appears to have omitted all records pertaining to their employment approval status, including whether they complied with the Commission's security suitability or ethics requirements. One example of this is the fragmented records provided for Tarak Makecha. According to the documents provided, Makecha was detailed to the FCC from the Office of Personnel Management (OPM) as a DOGE detailee on or about March 17, 2025.[28] During his approximately two weeks at the Commission, Makecha apparently requested – and received – a substantial amount of information from Commission staff including broadband mapping data and detailed personnel records regarding Commission employees.[29] However, there is no evidence that Makecha was ever actually "onboarded" to the Commission or cleared required security or ethics checks prior to receiving such information. For example, in a March 17, 2025, email, Makecha complains about the pace of his ethics clearance and states that: "At the end of the day all I need is badge/laptop so I can get FCC data and support FCC leadership in execution.

---

[28] See, e.g. Exhibit 1, Bates No. 002521.

[29] See, Exhibit 1, Bates No. 002816.

9

Whatever the fastest way to get the badge/laptop I am happy to support."[30]  One of the attachments to this email is labeled "Part 19 Blank FCC Financial Interests Certification Form – updated 6 Jan 2016 - Makecha signed." The copy of that form provided to Plaintiffs as an attachment to that email is blank,[31] although it appears that the Commission provided a copy of the completed form in an earlier production.[32] That form indicated that Makecha currently holds "financial interests in a corporation, company, firm, mutual fund, trust or other business enterprise."[33] Notwithstanding the fact that Makecha made that declaration, the Commission provided no additional information about approval of that form or, in the alternative, an ethics agreement, recusal, or divestitures required to bring Makecha into compliance with the ethics requirements of the Communications Act[34] and those administered by the Office of Government Ethics.[35] In fact, the only evidence that Makecha even received permission to access Commission premises came in the form of a skeletal March 18, 2025, email from David Yarbrough, Security Specialist, FCC Security Operations Center, to several FCC staffers stating that: "Tarak Makecha's preliminary adjudication has been approved, and the new hire can start working at the FCC."[36] The FCC "Ethics Approval" email was copied on this exchange but nothing further was provided. This omission raises concerns, because Makecha provided a Public Financial Disclosure Report (Form 278) to the Office of Personnel Management on February 28,

---

[30] Exhibit 1, Bates No. 002790.

[31] Exhibit 1, Bates No. 002793.

[32] Exhibit 1, Bates No. 000035.

[33] Id.

[34] 47 U.S.C. § 154(b)(2)(A).

[35] See, e.g. 5 C.F.R. §2635, Subpart D.

[36] Exhibit 1, Bates No. 000014-15.

10

2025, stating that he owned between $50,000 and $100,000 of stock in Telsa, Inc., as well stock in The Walt Disney Co. (owner of the ABC Television Network) and the Fidelity Telecommunications Portfolio (a telecommunications specific sector fund).[37]

14. Less than 2 weeks later, on April 1, 2025, Adam Candeub, FCC General Counsel, sent Makecha an email stating that: "As we discussed and you requested two weeks ago, we will be ending your gratis service as a Special Government Employee (SGE) to the FCC."[38] The failure of the FCC to provide any of the requested documents regarding his actual employment status and whether he was "onboarded" does not allow Plaintiffs to ascertain whether he was ever entitled to receive or further disseminate the information he requested.[39]

15. Thus far, the Defendant has sought to delay document production, and when pressed by this Court to act, Defendant has produced only sanitized email threads. The evidence clearly demonstrates that the FCC has acted in bad faith by withholding documents responsive to Plaintiffs' FOIA request. The Court should not accede to the FCC's effort to delay. Instead, the Court should order the limited discovery requested to complete the record, so that the parties can submits briefs and the Court can decide the merits on cross-motions for summary judgment.

---

[37] https://www.documentcloud.org/documents/25950476-makecha-tarak-n-od-new-entrant-278-2025-2025-03-20/?mode=document

[38] Exhibit 1, Bates Nos. 003251-3252.

[39] Similarly, David LaCerte, who in a March 17, 2025, email to, inter alia, Adam Candeub, wrote, "Hi Adam, is there anything requiring an ethics clearance prior to beginning work? I still haven't cleared ethics as a day one employee, so perhaps it's time to modernize the process." No documentation has been presented concerning LaCerte's onboarding or ethics clarence. Exhibit 1, Bates No. 002790.

## ARGUMENT

16. The Freedom of Information Act was enacted to provide a statutory right to public access to documents and records held by agencies of the federal government.[40] "As such, FOIA embodies a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.[41] "Government transparency is critical to maintaining a functional democratic polity, where the people have the information needed to check public corruption, hold government leaders accountable, and elect leaders who will carry out their preferred policies. Consequently, FOIA was enacted to facilitate public access to [g]overnment documents by establish[ing] a judicially enforceable right to secure [government] information from possibly unwilling official hands."[42]

17. Typically, FOIA actions are resolved without discovery.[43] However, Courts have allowed discovery in FOIA cases where there is a credible suggestion that the agency has acted in bad faith or has failed to conduct an adequate search.[44] Here, Plaintiffs have provided irrefutable evidence that the Defendant's search was inadequate. A failure to search goes to the heart of how that request was processed and therefore constitutes the sort of bad faith which

---

[40] *Pratt v. Webster*, 218 U.S. App. D.C. 17, 673 F.2d 408, 413 (D.C. Cir. 1982).

[41] *Id.* See also *Dep't of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 7-8, 121 S. Ct. 1060, 149 L. Ed. 2d 87 (2001) (noting that the basic objective of FOIA is disclosure, not secrecy).

[42] *Transgender Law Ctr. v. Immigration & Customs Enf't*, 46 F.4th 771, 779 (9th Cir. 2022) citing *Hamdan v. United States DOJ*, 797 F.3d 759, 769-70 (9th Cir. 2015).

[43] *Voinche v. FBI*, 412 F. Supp. 2d 60, 71 (D.D.C. 2006). *See also Pub. Citizen Health Research Group v. FDA*, 997 F. Supp. 56, 72 (D.D.C. 1998) ("Discovery is to be sparingly granted in FOIA actions.").

[44] See, *Robert Julien Family Del. Dynasty Tr. v. IRS*, No. 23-CV-80756-RLR/BER, 2024 U.S. Dist. LEXIS 29758, at *4 (S.D. Fla. Feb. 19, 2024) citing *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, No. CIV. 05-2078(EGS), 2006 U.S. Dist. LEXIS 34857, 2006 WL 1518964, at *3 (D.D.C. June 1, 2006).

prevents the Court from relying on the FCC's declarations. The Defendant has the burden to demonstrate that its search was reasonably calculated to uncover all relevant documents. The courts have stated that agencies must demonstrate adequacy of a search "beyond material doubt" or "beyond a material doubt."[45] Requiring Defendant to meet the "beyond material doubt" standard ensures that the "adequacy of an agency's search for requested documents is judged by a standard of reasonableness."[46] This approach properly places a concrete burden of proof on the government, requiring an agency to show that it has undertaken all reasonable measures to uncover all relevant documents. This standard also gives teeth to the adequacy standard by preventing agencies from blithely asserting adequacy without backing up such an assertion.

18. In *Comptel* the Court explained the standard as follows: "To satisfy its burden to show the applicability of an exemption, an agency may rely on detailed affidavits, declarations, a *Vaughn* index, in camera review, or a combination of these tools.[47] A *Vaughn* index in combination with agency declarations is the typical way agencies provide courts with the information required. A *Vaughn* index correlates each withheld document, or portion thereof, with a particular FOIA exemption and the justification for nondisclosure.[48] While agency affidavits are accorded a presumption of good faith,[49] they must " 'provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and

---

[45] *See, e.g., Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1248 (11th Cir. 2008); *Morley v. CIA*, 508 F.3d 1108, 1114, 378 U.S. App. D.C. 411 (D.C. Cir. 2007); *Miller v. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985); *Transgender Law Ctr. v. Immigration & Customs Enf't*, 46 F.4th 771, 779 (9th Cir. 2022).

[46] *Miller*, 779 F.2d at 1383 (citing *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351, 227 U.S. App. D.C. 253 (D.C. Cir. 1983)).

[47] *Comptel v FCC*, 910 F.Supp.2d 100 (D. D,C, 2012).

[48] *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C.Cir.1973).

[49] *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C.Cir.1991).

correlating those claims with the particular part of a withheld document to which they apply.' "[50] The agency should "disclose as much information as possible without thwarting the exemption's purpose."[51] Again, " 'conclusory and generalized allegations of exemptions' are unacceptable."[52]

19. In support of its response Defendant has not provided any affidavits or declarations by persons connected to the search. Its *Vaughn* index, Exhibit 2 hereto, lacks the specificity required by FOIA and the Courts, and fails to address segregability of documents. While Plaintiffs will contest the FCC's claimed exemptions at a later stage of this litigation, Defendant's paucity of justification for its broad-based assertions in the Vaughn Index is further evidence of its bad faith.

20. The FCC has failed to meet it burden of demonstrating the adequacy of its search beyond a material doubt. An agency search is inadequate when the record itself reveals "positive indications of overlooked materials."[53] In this case, the evidence abounds with instances of overlooked materials. FCC Chairman Carr took at least eight trips to Musk Affiliated Entities during the FOIA search request period. He posted evidence of those trips, including photographs on his social media account, yet not a single document was produced in response to Plaintiffs' FOIA request. We know that the parties communicated by text, yet not a single text message was produced or identified in the *Vaughn* index. Documents, including ethics compliance, concerning the onboarding DOGE employees at the FCC are almost completely missing. So many missing

---

[50] *Judicial Watch v. FDA*, 449 F.3d 141, 146 (D.C.Cir.2006) (citation omitted); see also *EPA v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

[51] *Hall v. Dep't of Justice*, 552 F.Supp.2d 23, 27 (D.D.C.2008) (quoting *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C.Cir.1987)).

[52] *Morley v. CIA*, at 1115 (D.C.Cir.2007) (citations omitted); see also *Vaughn*, 484 F.2d at 826."

[53] *Valencia-Lucena v. United States Coast Guard*, 336 U.S. App. D.C. 386, 180 F.3d 321, 327 (1999).

or unidentified documents places the FCC's good faith in conducting a search for responsive documents into serious question and demonstrates the need for discovery in this proceeding.

## CONCLUSION

21. The FCC has had a year and numerous opportunities to respond to Plaintiffs' FOIA request. It has not conducted its search for responsive documents in good faith. Instead, it has sought to delay the production of responsive documents and obfuscate their existence. Accordingly, Plaintiffs request that the Court order a narrow set of discovery requests consisting of interrogatories, requests for admission, requests for production and depositions. Such discovery will speed the document production process by helping the Plaintiffs identify responsive documents and limit the production of unnecessary, nonresponsive and repetitive documents.

By: /s/ Arthur Belendiuk
Arthur V. Belendiuk
D.C. Bar No. 336768
Smithwick & Belendiuk, P.C.
5028 Wisconsin Avenue, N.W., #301
Washington, D.C. 20016
(202) 363-4559

Dated: February 9, 2026