UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NINA BURLEIGH, et al.

Plaintiffs,

v.

FEDERAL COMMUNICATIONS
COMMISSION,

Defendant.

Civil Action No. 25-1268 (ABJ)

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Defendant, Federal Communications Commission ("FCC") by and through undersigned counsel submits its reply in support of its motion for summary judgment, ECF No. 21.

As explained in Defendant's opening brief, the FCC performed a reasonable search for documents responsive to Plaintiffs' Freedom of Information Act ("FOIA") request. Defendant also attached to its motion for summary judgment a declaration from FCC Attorney Kristi Thomspon that explained the review team's comprehensive efforts to ensure a search reasonably calculated to discover the requested documents, *see SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

In response, Plaintiffs' irrelevant inquiries and unfounded theories regarding the FCC's search are mere distraction. Plaintiffs' speculation does not create genuine issues of material fact that would entitle them to either repeated searches or discovery. Accordingly, the Court should enter summary judgment in favor of the FCC.

1

## ARGUMENT

### I.  FCC's Searches Were Reasonable and the Agency Acted in Good Faith.

In opposing the FCC's motion for summary judgment, Plaintiffs allege that the FCC acted in bad faith by withholding documents, redefining the search criteria, and concealing the fact that Chairman Carr has a Signal account. Pl's Opp. Br. at 20-21. Plaintiffs attempt to manufacture a dispute of material fact through conclusory arguments and speculation, while ignoring the factual record and declaration. These speculative musings are nothing more than Plaintiffs' subjective beliefs of what records they think should exist, and are not based on the record in this case, which shows that the United States DOGE Service ("USDS") had a very limited role at the FCC. Such conjecture and speculation are not sufficient to defeat summary judgment. *See Powell v. Internal Revenue Serv.*, 280 F. Supp. 3d 155, 163 (D.D.C. 2017) ("guesses about the existence of documents do not overcome the good-faith presumption afforded government declarations."). As demonstrated by the record and the Thompson Declaration, the FCC acted in good faith, developed a reasonable search, and processed 4,130 pages of records responsive to Plaintiffs' request; therefore, summary judgment for the FCC is appropriate.

Plaintiffs' primary argument is this: because they believe documents exist and were not produced, FCC's search was inadequate and in bad faith. Pl's. Opp. Br. at 7-22. But whether the results of the agency's search satisfy Plaintiffs is not the standard. *Watkins Law & Advoc., PLLC v. U.S.*, 78 F.4th 436, 444 (D.C. Cir. 2023) (adequacy viewed by the appropriateness of the methods used to carry out the search.) An agency "need not demonstrate that all responsive documents were found and that no other relevant documents could possibly exist," as long as the agency made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't*

*of Army*, 920 F.2d. 57, 68 (D.C. Cir. 1990) (citing *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)). "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard*, 926 F.2d at 1201.

The FCC's "good faith effort to conduct a search for the requested records" is demonstrated by the Thompson Declaration, which sets forth a detailed explanation of the extensive searches and effort expended to respond to a FOIA request that, overall, was not reasonably described. "To be sufficiently detailed, the Agency's affidavits must at a minimum describe what records were searched, by whom, and through what process." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994). In describing the Agency's search methodology for the eight subparts to Plaintiffs' FOIA request, the Thompson Declaration does exactly that. *See* Decl. ¶¶ 16-40.

The FCC properly developed concrete parameters for beginning a reasonable search, after engaging in negotiations with Plaintiffs, including raising the agency's good faith concern that the request as drafted was not reasonable. *See* Mot. at 2-7. Plaintiffs take issue with the nature of the narrowing negotiation, but the contents of the narrowing letters speak for themselves. *See* Decl. ¶ 12; ECF No. 17, Exhibits 2, 3. Regardless, Plaintiffs' arguments about the nature of the negotiations are not material. The FCC has explained why Plaintiffs' request was overbroad and not reasonably described, and that the reasonableness of the FCC's search must be judged in that context. *See* Mot. at 2-4, 12-14. A "narrow interpretation" of a "FOIA request is permissible," so "long as the narrowed scope is a reasonable interpretation of what the request seeks." *US Inventor Inc. v. PTO*, 2024 U.S. Dist. LEXIS 27101 * 20 (quoting *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 154 (D.D.C. 2010)).

The Thompson Declaration explains the review team's step-by-step search, including: the initial requests to the FCC's Office of the Managing Director ("OMD"), OMD's manual search

for records, the development of lists of custodians, the review team's identification of a key list of custodians, internal dialogue with FCC staff, and supplemental searches. Decl. ¶¶ 16-40. The Thompson Declaration connects the locations and custodians searched with an explanation of why those locations and individuals were the most likely repositories of responsive records. *Id*. And it explains how the review team followed up on leads as they arose. *Id.*

Plaintiffs' arguments that the review team improperly limited its list of custodians or email domains to be searched are addressed in the FCC's opening brief. Mot. at 12-14; *see also Heffernan v. Azar*, 317 F. Supp. 3d 94, 107-108 (D.D.C. 2018) (agencies have discretion in crafting search terms, and a requester cannot dictate preferred search terms); *McClanahan v. U.S. Dep't of Just.*, 204 F. Supp. 3d 30, 44 ("the reasonableness of a search is not measured against the scope dictated by a requester's search instructions, particularly when those instruction do not provide 'clear and certain' 'lead[s]'" (quoting *Mobley v. C.I.A.*, 806 F.3d 568, 582 (D.C. Cir. 2015))). The Thompson Declaration rebuts Plaintiffs' claim that the Agency's search was inadequate and in bad faith. Instead, it establishes that the search was reasonable and tailored as a "reasonable interpretation of what the request seeks." *See* Pl's Opp. Br. at 25-26; *US Inventor Inc.*, 2024 U.S. Dist. LEXIS 27101 * 20. Nothing more is required. *Schoenman v. FBI,* 764 F. Supp. 2d 40, 45 (D.D.C. 2011).

Plaintiffs' speculative doubts about the adequacy of the agency's search are unsupported. *See Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003); *Hunton & Williams LLP v. U.S. Envt'l Protect.* Agency, 248 F. Supp. 3d 220, 236-237 (D.D.C. 2017) (once the agency has met its burden to demonstrate the search was reasonable, the requester bears the burden to provide "countervailing evidence," not mere speculation, that raises "substantial doubt" about the adequacy of the search). Plaintiffs try to make something of their claim that USDS employee Tarek Makecha was not a "software engineer," and complain that his resume was not produced. Pl's.

Opp. Br. 7-9. But whether Tarek Makecha was a software engineer has no relevance to this case, and the charge that the Agency did not produce his resume is inaccurate. The FCC produced Tarak Makecha's resume as Bates No. 002794 in the fourth production made on January 16, 2026. *See* Ex. 1 at No. 002794.

Further, Plaintiffs identify two calendar invites that they claim were produced in response to another FOIA request but not produced to Plaintiffs. Pl's Opp. Br. at 14; Exhibit 7. The first record is a July 11, 2025 calendar entry for a meeting between Jordan Wick and Scott Delacourt on "IT modernization." The second record is a July 14, 2025 calendar entry for a meeting between Jordan Wick, Scott Delacourt, and Anthony Patrone on "IT planning and oversight." However, the FCC produced records about these meetings. The FCC produced a calendar invite for the July 11, 2025 meeting as Bates No. 003133-4. *See* Ex. 1 at Nos. 003133-4. The FCC also produced emails discussing the meeting, including ultimately proposing to reschedule the meeting for Monday, July 14, 2025, as Bates Nos. 003273-003274, 003275-003277, and 003278-003281. *See* Ex. 1 at Nos. 003273-003274, 003275-003277, and 003278-003281. As discussed above, the proper inquiry is not whether the FCC produced every record that might exist; "it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Iturralde*, 315 F.3d at 315.

Plaintiffs further take issue with the lack of itinerary or briefing documents associated with two trips to Redmond, Washington in 2021 and 2024. Pl's. Opp. Br. at 16-17. However, the Thompson Declaration sets forth the search for all relevant travel records. Decl. ¶¶ 32-37. Had any additional records existed, they would have been captured and processed.

Finally, Plaintiffs allege that the FCC failed to search for and produce Signal communications based upon their speculation that FCC officials used Signal for official

government business. Pl's. Opp. Br. at 9-13. In support of their claim that FCC personnel, including Chairman Carr, were communicating on Signal, they rely on the discovery of a phone number for Chairman Carr and searching that phone number in Signal to confirm the existence of an account allegedly linked to the Chairman. But the phone number Plaintiffs uncovered was for the Chairman's personal cell phone, a number inadvertently released in response to a separate FOIA request. Thompson Supplemental Decl. ¶ 5. Chairman Carr has a separate FCC-issued cell phone for conducting government business. *Id*. The record shows that a news reporter asked the Chairman to confirm whether the phone number is the appropriate contact number. But the Chairman did not confirm the use of his personal number or give any indication that he is using that phone number for government business. *See* Ex. 4. This inquiry from a news report falls far short of the evidence required to show a government official conducted agency business on a pertinent topic via text on a personal phone. *See Shteynlyuger v. Ctrs for Medicare and Medicaid Servs.*, 698 F. Supp. 3d 82, 109 (D.D.C. 2023) ("an agency may be required to search for text messages where it is 'reasonably likely' that an employee conducted agency business on a pertinent topic via text," but an employee merely sharing her phone number on an email thread in case an issue arose did not constitute a clear and certain lead that responsive text messages existed); *Hunton & Williams*, 248 F. Supp. 3d at 236-238 (speculative arguments about the possible existence of text messages or personal emails conducting agency business are not sufficient evidence to overcome the presumption that the agency's search was adequate; the search is sufficient where the agency performs targeted supplemental searches based on concrete leads).

Nothing prohibits a government executive from communicating via Signal in a personal capacity. And the fact that a Signal account may exist and is tied to a federal employee's personal phone number is not evidence that they are using that account to conduct government business.

Plaintiffs attempt to cobble together a causal connection by pointing to USDS employees not connected to the FCC who conducted business via Signal. This has no bearing on the communication practices of FCC personnel. It does not constitute any evidence that FCC personnel communicated with USDS personnel via Signal. It does not demonstrate that the FCC's standard practices and policies were not followed. It does not create any genuine dispute as to the facts set forth in the Thompson Declaration.

As Plaintiffs admit, the FCC produced responsive Microsoft Teams messages and the text thread between USDS personnel and FCC General Counsel Adam Candeub. Pl's Opp. Br. at 9. The search conducted for electronic messages was reasonable. *See Hunton & Williams*, 248 F. Supp. 3d at 236-238. The review team initiated a search for text messages with USDS personnel by conducting an inquiry, and learned that neither the Chiefs of Staff nor the Chairman even had their phone numbers. Decl. ¶ 21. As we have explained, when the FCC learned of the text message between Mr. Candeub and one of the USDS hires, it conducted a supplemental search and produced the entire text conversation. *See* Decl. ¶¶ 31-32.

An Agency "need not knock down every search design advanced by" a FOIA requestor to establish the adequacy of its search. *Dibacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (citing *SafeCard*, 926 F.2d 1201); s*ee also Dillon v. U.S. Dep't of Just.*, 444 F. Supp. 3d 67, 87 (D.D.C. 2020) ("Because the declarations are relatively detailed and non-conclusory, we accord them a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.") (internal quotations and citations omitted). Plaintiffs' arguments fail to call into question either the adequacy of the declaration or the search the FCC review team performed, and Defendant is entitled to summary judgment as to the reasonableness of the search in connection with the eight subparts of Plaintiffs' FOIA request.

## II.    The Withholdings Were Appropriate.

The FCC has established why its withholdings and redactions were appropriate under FOIA. Mot. 26-35. Plaintiffs fail to address the FCC's arguments. *See generally* Pl's. Opp. Br. Nor do Plaintiffs address these withholdings in their statement of material fact, ECF No. 22-2. Therefore, the Court does not need to assess the legal sufficiency of each exemption. *See Shapiro v. DOJ*, 239 F. Supp. 3d 100, 105-106 n.1 (D.D.C. 2017) ("[w]here the FOIA requester responds to the government's motion for summary judgment without taking issue with the government's decision to withhold or to redact specific documents, the Court can reasonably infer that the FOIA requester does not seek those specific records or information and that, as to those records or information, there is no case or controversy sufficient to sustain the Court's jurisdiction.").

## CONCLUSION

For these reasons, the FCC respectfully requests that this Court grant summary judgment in its favor. Plaintiffs' request for "discovery" should be denied.

*        *        *

Dated: July 2, 2026                    Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Amanda L. Torres*
    AMANDA L. TORRES, D.C. Bar #1562702
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2507

*Attorneys for the United States of America*

8